UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOVES EXPRESS TRUCKING LLC,

               Plaintiff,

v.

CENTRAL TRANSPORT, LLC,

               Defendant.

_____/

Case No. 14-14453

Paul D. Borman
United States District Judge

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 28)

In this action, Plaintiff Loves Express Trucking LLC seeks money damages for the loss and/or damage to its personal property that occurred while Defendant Central Transport, LLC was transporting the property from Ohio to Illinois. Plaintiff's single claim is brought pursuant to the Carmack Amendment to the Interstate Commerce Act, 29 U.S.C. § 14706, *et seq.*

Now before the Court is Defendant's Motion for Summary Judgment. (ECF No. 28.)  Plaintiff filed a timely response and Defendant then filed a reply.  (ECF Nos. 30, 31.)  A hearing on this matter was held on Wednesday, August 3, 2016. For the following reasons, the Court will grant Defendant's Motion for Summary Judgment.

# I. BACKGROUND

Plaintiff is a Florida trucking company.  (Compl., at ¶ 1.)  In November 2013, Plaintiff's truck broke down in Illinois and was towed to the I-70 Truck Center in Effingham, Illinois.  (*Id.*, at ¶ 6; Pl.'s Resp., Ex. D, Love Dep., at 14.)  The shop manger at the I-70 Truck Center advised Plaintiff's president, Nathaniel Love, that the truck had a hole in the engine block.  (Love Dep., at 14.)

To repair the truck, Love purchased a new Detroit 60 Series 14.0 engine ("Engine") from non-party Chicago Truck Parts, Inc. ("Chicago Truck") for the amount of $24,150. (*Id.*, at ¶ 7; Pl's. Resp., Ex. C, Soraghan Dep., at 42.)  Chicago Truck did not have the Engine in stock so it purchased the Engine from an Ohio company, Stour II, for $18,000.  (Soraghan Dep., at 23; Def.'s Ex. 7, Bill of Lading.)  Chicago Truck's former president, Kenny J. Soraghan, testified that he contacted Chicago Truck's exclusive freight broker, non-party Blue Grace, to transport the Engine from Ohio to the I-70 Truck Center in Effingham.  (Soraghan Dep., at 63.)  Blue Grace, in turn, subcontracted the transport of the Engine to Defendant.

Defendant picked up the Engine in Toledo, Ohio on November 15, 2013 and issued a Bill of Lading acknowledging Defendant's receipt of the Engine.  (Ex. 7, Bill of Lading; Pl.'s Ex. A, Andrea Bouchard Dep., at 42.)  The Bill of Lading

provided that the Engine was being shipped from "Stour II," to "I 70 Truck Center" and the "3rd Party Freight Charges Bill to" Blue Grace. (*Id.*) The Bill of Lading further provided that it was "Subject to: NMFC 100; CTII 100 Rules Tariff; 49 USC 14706 and 49 CFR 370." (*Id.*)

The Engine arrived at I-70 Truck Center in a damaged condition. (Love Dep., at 24.) Defendant's representative, Andrea Bouchard, testified that at some point during the shipment a freight handler discovered the Engine was damaged. (Bouchard Dep., at 54-59.) On December 9, 2013, Defendant sent Stour II a "Notice of on Hand Freight" which provided that the Engine was not delivered because of "Potential Dmg." (Pl.'s Ex. B, PGID 466.) Blue Grace also received a copy of this letter. (*Id.*, "CC: Blue Grace Logistics.") The On Hand Notice advised Stour II that it had five days from the date of the letter to relay instructions to Defendant regarding the disposition of the Engine or the Engine would be returned to its original shipping location, and if refused there, Defendant would "auction or dispose the material." (*Id.*)

Around this same time, Defendant also contacted Blue Grace, who had hired Defendant; Blue Grace requested via email that the Engine be shipped to Chicago Truck. (Bouchard Dep., 65, 70-71; *see also* Pl.'s Ex. B, 12/16/13, 12/17/13 Emails, Blue Grace representative inquiring if "it is possible to send this freight

3

back to the original manufacturer in Chicago?  Please let me know as that is what

the customer is asking.")  Defendant then created a Receipt of Delivery that

incorporated the previous Bill of Lading, included the "pro number" which

identified the shipment, and provided that Stour Limited was "Shipper" and that

Chicago Truck was consignee of the shipment.  (Pl.'s Ex. B, Central Transport

Delivery Receipt, PGID 461.[1])  Chicago Truck received the Engine on December

19, 2013 and an employee signed the Receipt of Delivery.  (*Id.*, Bouchard Dep., at

72; Love Dep., at 47-48.)

Soraghan attempted to speak with Defendant regarding the damaged Engine

just once on the phone.  Soraghan explained:

> I called their claims hotline and they asked me for my Central
> Transport account number.  When I couldn't provide one – because
> we don't have an account through them; we only use logistics brokers
> – they told me that they can't do anything.  I need to go through my
> logistics broker.

(Soraghan Dep., at 60-61.)  Thereafter, Soraghan only corresponded with Blue

Grace regarding the Engine.  (*Id.*, at 61.)  Soraghan testified that Blue Grace

represented to him that it and Defendant were disputing who was responsible:

Soraghan described it as a "blame game."  (*Id*. at 33.)  Soraghan further testified

---

[1] The Court notes that the text "Central Transport Delivery Receipt" is cut-off, however,
the text is clear.

that Blue Grace sent him Defendant's claim form and advised him to complete the form. (*Id*.) Soraghan testified that because he could not determine the price estimate for fixing the Engine, he did not complete the form or submit anything to Defendant or Blue Grace. (*Id*.) It is undisputed that Defendant never received a written claim for damages regarding the Engine.

During this time period, late November 2013 and through December 2013, Love repeatedly called and emailed Soraghan regarding the status of the damage claim and sought a refund for the Engine. (Love Dep., at 43-44.) Soraghan admitted he was "very much avoiding" Love, and did not answer the bulk of Love's calls or emails during this time. (Soraghan Dep., at 59.) Soraghan and Plaintiff did speak on December 16, 2013, and Soraghan advised Love that Defendant was responsible for the damage and that he had submitted the damage claim to Defendant. (Love Dep., at 49.) Soraghan also emailed Love the "completed" claim form at some point during December 2013 to bolster his claim that he was working on the issue. (*Id*., at 59, 65; Soraghan Dep., at 59.) Around this time, Love also received a copy of the Bill of Lading. (*Id*., at 71.) On December 24, 2013, Soraghan advised Plaintiff that he had received the damaged Engine and that he was going to fix it and get the Engine back to Love after

5

Christmas and "not to worry."[2]  (Love Dep., at 25, 31, 51.)  This was their last conversation.

Despite his representations to Love, Soraghan never submitted the damage claim to Blue Grace or Defendant.  In December 2013, Chicago Truck was struggling financially and Soraghan did not have money to fix the Engine.  (Soraghan Dep., at 47-48.)  Soraghan never tracked down replacement parts and never determined an estimated cost to fix the Engine.  After closing for the Christmas holiday, Soraghan never reopened Chicago Truck.  (*Id*., at 48-49.)  In January 2014, Soraghan sold the Engine for $16,000, but did not give any of the proceeds of the sale to Love.  (*Id*.)

Plaintiff filed suit against Chicago Truck in Illinois Circuit Court.  (Love Dep., at 62.)  On May 5, 2014, Plaintiff received a default judgment against Chicago Truck in the amount of $57,168.85, this amount included "compensatory damages for the contractual amount of $24,150.00."  (Def.'s Ex. 8, Default Judgment.)  Love could not collect on his judgment, however, because Chicago Truck was out of business.  (Love Dep., at 62.)

---

[2] Soraghan testified that he and Plaintiff had one last phone conversation in January 2014 wherein Soraghan offered to sell the Engine and give him a portion of the proceeds.  (Soraghan Dep., at 50-51.)  Soraghan testified that Plaintiff rejected this offer because he had found an attorney and was going to pursue not just a refund but also compensation for work he had lost due to the delay.  (*Id*.)  Plaintiff disputes that this conversation ever occurred.

On June 9, 2014, Plaintiff filed this action against Defendant in Circuit Court of Cook County, Illinois.  In its original complaint, Plaintiff asserted a third party beneficiary claim based upon a breach of contract between Defendant and Chicago Truck.  (ECF No. 1.)  Defendant was served with the complaint on October 7, 2014 and thereafter removed the action to United States District Court of the Northern District of Illinois (case no. 1:14-cv-08344) claiming that Plaintiff's claim was completely preempted by the Carmack Amendment, 49 U.S.C. § 14706.  On November 7, 2014, Defendant's motion to transfer venue was granted and the case was transferred to this Court.

On December 11, 2014, Defendant filed a motion to dismiss and argued that Plaintiff's claim was preempted by the Carmack Amendment, 49 U.S.C. § 14706. (ECF No. 7.)  In lieu of filing a response to the motion to dismiss, Plaintiff filed a request to amend its complaint to assert a claim pursuant to the Carmack Amendment.  (ECF No. 9.)  Plaintiff's request to amend was granted and it filed its Amended Complaint on May 5, 2015.  (ECF No. 17.)

## II. STANDARD OF REVIEW

Defendant has moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure.  "Summary judgment is proper where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as

7

a matter of law.'" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131 (6th Cir.

2014) (quoting FED. R. CIV. P. 56(a)).  "There is no genuine issue for trial where

the record 'taken as a whole could not lead a rational trier of fact to find for the

non-moving party.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013)

(quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp*., 475 U.S. 574, 587

(1986)).  "Of course, [the moving party] always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any,' which it believes demonstrate the

absence of genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).  In making this evaluation, however, the court must always examine

the evidence and draw all reasonable inferences in favor of the non-moving party.

*Hawkins v. Anheuser-Busch, Inc*., 517 F.3d 321, 332 (6th Cir. 2008).

　　　If this burden is met by the moving party, the non-moving party's failure to

make a showing that is "sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial"

will mandate the entry of summary judgment.  *Celotex*, 477 U.S. at 322-23.

Further, the non-moving party must set forth specific facts which demonstrate that

there is a genuine issue for trial and cannot merely rest upon the allegations or

denials of his pleadings.  FED. R. CIV. P. 56(e).  Ultimately, the court must "decide

'whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law.'"

*Burgess*, 735 F.3d at 471 (quoting *Anderson v Liberty Lobby, Inc*., 477 U.S. 242,

251-52 (1986)).

## III. ANALYSIS

The Carmack Amendment, enacted in 1906 as an amendment to the

Interstate Commerce Act, 24 Stat. 379, "created a national scheme of carrier

liability for loss or damages to goods transported in interstate commerce."[3]  *Exel,*

*Inc. v. S. Refrigerated Transp., Inc*., 807 F.3d 140, 148 (6th Cir. 2015) (citing

*Adams Express Co. v. Croninger*, 226 U.S. 491, 503-06 (1913));   The Carmack

Amendment

> restricts carriers' ability to limit their liability for cargo damage.  It
> makes a motor carrier fully liable for damage to its cargo unless the
> shipper has agreed to some limitation in writing. 49 U.S.C. §
> 11706(a), (c), § 14101(b).  Making carriers strictly liable relieves
> shippers of the burden of determining which carrier caused the loss as
> well as the burden of proving negligence.  Carriers in turn acquire
> reasonable certainty in predicting potential liability because shippers'
> state and common law claims against a carrier for loss to or damage
> were preempted.

---

[3] The Carmack Amendment was originally codified at 49 U.S.C. § 11707.  "Under the
ICC Termination Act of 1995, which became effective January 1, 1996, the Carmack
Amendment was revised, recodified, and replaced by 49 U.S.C. § 14706."  *Exel*, 807 F.3d at 150
n. 9.

*Id*. (internal citation omitted).

Pursuant to the Carmack Amendment, a carrier is liable to the person entitled to recover under the receipt or bill of lading.  49 U.S.C. § 14706(a)(1).  To set forth a prima facie claim under the Carmack Amendment, a plaintiff must evidence that the shipment (1) was in good condition at the point of origin, (2) arrived in a damaged condition at the point of destination, and (3) was damaged. *Plough, Inc. v. Mason and Dixon Lines*, 630 F.2d 468, 470 (6th Cir. 1980) (citation omitted).  If the plaintiff can establish a prima facie case, the carrier will be liable unless it can establish that it was free from negligence and that the damage was caused by "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods."  *Id*. (citation omitted).

Plaintiff's Amended Complaint sets forth a single claim entitled "Claim for Indemnification pursuant to 49 U.S.C. 14706."  (ECF No. 17, Am. Compl.) Plaintiff alleges in its Amended Complaint that "Chicago Truck made a claim in writing against defendant for the damage to the engine but [up]on information and belief, never collected on its claim against defendant" and "Plaintiff is entitled to the amounts of the engine insured as he is the third party beneficiary to the Cargo Loss & Damage Claim Agreement between Defendant and Chicago Truck."  (*Id*.,

10

at ¶¶ 10, 13.)  Plaintiff describes the basis for Defendant's liability, thus: "Pursuant to 49 USC sec. 14706(b), the carrier issuing the bill of lading is entitled to the insurance which defendant agreed to provide to Chicago Truck was for [sic] the benefit of the plaintiff.  Plaintiff is entitled to recover by standing in the shoes of Chicago Truck, whose claim was not honored by defendant."  (*Id.*, at  ¶¶ 18, 19.)

As an initial matter, the Court notes that Defendant is a licensed motor carrier as defined by the Carmack Amendment.  Additionally, the record is clear that Chicago Truck never submitted a Cargo Loss & Damage Claim to Defendant, and Defendant never agreed to pay a claim of damages related to the Engine. Thus, the Court finds that any claim Plaintiff is attempting to assert based upon being a third party beneficiary to such an agreement fails as a matter of law because no such agreement existed.

Plaintiff also alleges that pursuant to the Carmack Amendment, 49 U.S.C. § 14706, it is entitled to recover against Defendant, the motor carrier, by "standing in the shoes of Chicago Truck."  (Am. Compl., at ¶ 19.)  Plaintiff contends, and Defendant does not dispute, that Chicago Truck could have filed a claim for damages with Defendant for the Engine.  Indeed, while Chicago Truck is not listed as a shipper, owner, consignee or consignor on the original Bill of Lading issued by Defendant, Chicago Truck was listed as consignor of the Engine on the Receipt

11

of Delivery which incorporated the Bill of Lading and which was signed by an individual on behalf of Chicago Truck.  (*See* Receipt of Delivery.)  Plaintiff, the undisputed owner of the Engine, is not listed as a party on the Bill of Lading or the Delivery Receipt.  Plaintiff did, however, receive a copy of the Bill of Lading.

Defendant now moves for summary judgment on the basis that Plaintiff's claim for damages under the Carmack Amendment is time barred based on the time limits set forth in the Bill of Lading and Receipt of Delivery issued by Defendant on the Engine.  The Bill of Lading incorporated the National Motor Freight Classification ("NMFC") 100 (Def.'s Ex.13), Defendant's Rules Tariff known as CTII Rules Tariff (Def.'s Ex. 14), and 49 U.S.C. § 14706 and 49 C.F.R. § 370. (*See* Bill of Lading & Receipt of Delivery, incorporating the Bill of Lading.)

The Carmack Amendment sets forth the minimum time limits, or statutory floor, for asserting claims under the statute, stating:

> A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section.  The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

49 U.S.C. § 14706(e).  The implementing regulations of the Carmark Amendment provide the minimum filing requirements regarding a claim for loss or damage to cargo: "[a] written or electronic communication (when agreed to by the carrier and

12

shipper or receiver involved) from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage" that contains "facts sufficient to identify the baggage or shipment," an assertion of liability for alleged loss or damage, and a claim for "payment of a specified or determinable amount of money." 49 C.F.R. § 370.3; 49 C.F.R. § 100.5. The NMFC 100, and Defendant's Tariff which incorporates the same, provides that a claim must be submitted in writing "within not more than nine (9) months from the date of delivery in the event of a damage claim." (Def.'s Ex. 13, NMFC; Ex. 14, Tariff.) Thus, Defendant argues that Plaintiff's claim is time barred because neither Chicago Truck nor Plaintiff ever filed a damage claim.

Plaintiff does not dispute that the Bill of Lading and Receipt set forth these notice of claim requirements, but argues that it is not subject to these limitations for two reasons: (1) it is not a party to the Bill of Lading and cannot be bound by its terms; and (2) Defendant is estopped from relying upon the nine month time limit because it refused to allow Chicago Truck to make a claim. The Court addresses each argument below.

A.      Person entitled to Recover under the Bill of Lading or Receipt

 A bill of lading is "the basic transportation contract between the shipper-consignor and the carrier." *S. Pac. Transp. Co. v. Comm. Metals Co.*, 456 U.S.

336, 342 (1982).  Plaintiff contends that because it was not a party to the Bill of Lading it is not bound by the terms of that agreement.  It is clear that Plaintiff did not arrange the transport of the Engine, did not sign the Bill of Lading, and is not identified as the consignor, consignee, shipper, or carrier on the Bill of Lading or the Receipt.

In support of this argument, Plaintiff summarily relies upon a string cite of case law yet provides no analysis or reasoning to buttress its argument.  (Pl.'s Resp., at PGID 422-23.)  The Court finds that Plaintiff's case law is unpersuasive, non-binding, and otherwise distinguishable from the present case.  The cases Plaintiff relies upon are cases involving "indemnification" and contribution claims under the Carmack Amendment between two carriers or a carrier and a broker; critically, none of these cases address facts analogous to the present action.  *See Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 776 F. Supp. 2d 375 (S.D. TX 2011) (stevedore for maritime shipper filed a claim against later motor carrier, seeking contribution or indemnification for damages to a transformer that was being transported from India to the United States); *AIDA Dayton Techs. Corp. v. I.T.O. Corp. of Balt.*, 137 F. Supp. 2d 637 (D. Md. 2001) (shipper sued the carrier and the company that loaded the machine press that was damaged, that company then filed a cross claim against the carrier for indemnity and contribution);

14

*Dominion Res. Servs., Inc. v. 5K Logistics, Inc*., No. 3:09-CV-315, 2010 WL 679845, *3 (E.D. Va. Feb. 24, 2010) (action regarding claim of broker against its subcontractor regarding a damage claim brought after the broker paid the owner for the damaged goods);[4] *Taft Equip. Sales Co. v. Ace Transp*., 851 F. Supp. 1208, 1213 (N.D. Ill. 1994) (action regarding liability for damages between multiple carriers, finding there was no time limit to bring a claim when there was no bill of lading between the fourth party and fifth party defendants and observing that "Aero has made no argument regarding whether it is entitled to benefit from the bill of lading issued by" another carrier.).

Plaintiff's reliance upon these indemnification cases appears to be related to its belief that its claim is also one for "indemnification" and "insurance"[5] from Defendant that was owed to Chicago Truck pursuant to § 14706(b).  (Am. Compl. ¶ 18.)  Section 14706(b), however, applies on its face only to the apportionment of claims between two "carriers" under the Carmack Amendment.  Here, the dispute

---

[4] After a bench trial, this case was appealed to the Fourth Circuit, *5K Logistics, Inc. v. Daily Express*, 659 F.3d 331 (4th Cir. 2011).  The Fourth Circuit reversed the lower court's determination that 5K, a logistics broker, was not time barred by the nine month notice of claim provision in the bill of lading.  The Fourth Circuit rejected the argument that 5K's claim for indemnity and contribution was not fixed until its liability to its customer was determined, finding that "[i]t suffices to say that 5K was contractually obligated to file the claim within nine months, it did not do so..."  *Id*., at 336.  5K was a party to the Bill of Lading in that case.

[5] Plaintiff does not tether the word "insurance" to any contract or statute in the record.

15

is between an owner of goods and the carrier and § 14706(b) is inapplicable.[6]

Thus, Plaintiff's reliance upon the case law cited *supra*, is misplaced and not

relevant to the present case which does not implicate apportionment or

indemnification under the Carmack Amendment.

Defendant argues that Plaintiff is bound by the Bill of Lading because under

the Carmack Amendment, a carrier is only liable to a person who is "entitled to

recover under the receipt or bill of lading." *Exel*, 807 F.3d at 148 (citing 49 U.S.C.

§ 14706(a)(1)). Defendant contends that if the liability springs from the Bill of

Lading or Receipt, then Plaintiff must be bound to the terms of the same, including

the notice of claim requirements.

At bottom, Plaintiff's argument that it is not constrained by the terms

incorporated in the Bill of Lading or Receipt implicate the more basic concern of

whether Plaintiff is entitled to sue under the Carmack Amendment. While the

Sixth Circuit recently held that non-shipper brokers do not have "the direct right to

sue under the statute," the issue of whether an owner of goods, who is not a party

to the bill of lading or the receipt, has standing to sue under the Carmack

---

[6] Section 14706(b) states: "Apportionment: The carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, as evidenced by a receipt, judgment, or transcript, and the amount of its expenses reasonably incurred in defending a civil action brought by that person."

Amendment remains unsettled. *Excel*, 807 F.3d at 148-47. There are only two

unpublished district court opinions in this district that address the issue. In

*Consolidated Pipe & Supply, Co., Inc. v. Rowe Transfer, Inc*, No. 3:11-cv-622,

2013 WL 6504744, *5 (E.D. Tenn., Dec. 11, 2011), the court held, with no

analysis, that an owner of the damaged cargo "may step into the shoes of the

shipper." *Id*. (citing *Banos v. Eckerd Corp*., 997 F. Supp. 756, 762 (E.D. La. 1998)

("[C]onsignors, holders of the bills of lading issued by the carrier, and persons

beneficially interested in the shipment although not in possession of the actual bill

of lading, in addition to shippers, have standing to sue under the Carmack

Amendment.") and *Harrah v. Minn. Mining & Mfg. Co.*, 809 F. Supp. 313, 318

(D.N.J. 1992)). In *Northrich Co. v. Group Transport Services, Inc*., No.

1:13CV1161, 2015 WL 1291447 (N.D. Ohio, Mar. 23, 2015), on the other hand,

the district court found the plaintiff who referred to itself as "the buyer," "the

purchaser" and "the one with the insurable interest" lacked standing to sue the

carrier under the Carmack Amendment when it was not a party to the bill of lading.

*Id*., at *5. The *Northrich* court also recognized the dearth of any authority "which

explains how a party that is not the shipper, that is not listed on, or a party to, the

bill of lading; that did not posses the bill of lading; that did not negotiate with the

carrier; and that was not the receiving party of the shipment, has standing to sue for

17

damage to the cargo under the Carmack Amendment." *Id*.

In *OneBeacon Ins. Co. v. Hass Industries, Inc*., 634 F.3d 1092 (9th Cir. 2011), the Ninth Circuit addressed the issue of whether "an owner of goods who was not referenced by name in the bill of lading has standing under the current text of the Carmack Amendment," and distinguished the case law upon which *Rowe Transfer* relied. *Id*., at 1096. Upon review, the Court finds the analysis in *OneBeacon* persuasive and in harmony with the *Northrich* decision.

In *OneBeacon*, a company called PPI purchased goods from Omneon and requested Omneon ship the cargo to the end purchaser, the City University in New York. Omneon and PPI agreed that the ownership of the cargo would pass from Omneon to PPI when the shipment left Omneon's dock. Omneon then arranged for the shipment to be transported by Haas, who issued a bill of lading which included conditions of contract carriage and a liability limitation of 50 cents per pound. PPI's cargo was damaged in transit and PPI attempted to file a claim with Haas which was denied on the basis that Omneon, not PPI, was entitled to make a claim. Omneon then made a claim but was issued only a small sum based on the liability limitation in the bill of lading. OneBeacon, PPI's insurer, paid PPI for the value of the lost goods and then "stepped into PPI's shoes as subrogee" and brought suit against Haas under the Carmack Amendment. *Id*., at 1095-96. The

18

Ninth Circuit noted that other courts have held that "particular classes of persons are entitled to recover under the receipt or bill of lading" including "shippers, consignors, consignees, 'holders of the bill of lading,' and 'persons beneficially interested in the shipment.'" *Id*., at 1098 (citing *Harrah*, 809 F. Supp. at 318 and *Banos*, 997 F. Supp. at 762). The Ninth Circuit, however, found that "the crucial phrase under the current statute is 'the person entitled to recover *under the receipt or bill of lading*.'" *Id*. (citing 49 U.S.C. § 14706(a)(1)) (emphasis in *OneBeacon*). Accordingly, the Ninth Circuit looked to the bill of lading itself to determine who had standing to sue under the Carmack Amendment and concluded that PPI (and OneBeacon as subrogee) fell within the definition of "Shipper" as provided on the bill of lading in the conditions of contract carriage, and thus was entitled to sue under the Carmark Amendment. *OneBeacon*, 634 F.3d at 1099. The Ninth Circuit also went on to conclude that Haas effectively limited its liability through the bill of lading and the bill of lading "provided sufficient notice of the limitation of liability." *Id*., at 1100.

In the present action, Plaintiff is not a party to the Bill of Lading or Receipt, nor listed as consignee, consignor, shipper, or carrier. Further, unlike *OneBeacon*, the Bill of Lading and Receipt does not provide any definitions that could be construed to include Plaintiff as the "shipper" or "consignee." Accordingly, the

19

Court finds that Plaintiff is not a "person entitled to recover under the receipt or bill of lading." For this reason, summary judgment is appropriate.

The Court also finds, in the alternative, that even *if* Plaintiff was entitled to sue Defendant under the Carmack Amendment based upon its status as owner or as a person with a beneficial interest in the Engine, *Harrah*, 809 F. Supp. at 318, Plaintiff is bound by the terms of the Bill of Lading and/or Receipt of Delivery. Indeed, if Plaintiff is "entitled to recover" under the Bill of Lading or Receipt then Plaintiff must also be bound by those terms. Plaintiff also admitted that it received a copy of the Bill of Lading and was therefore aware of the limits incorporated therein. Significantly, this result is congruent with Plaintiff's argument and allegations that it must be allowed to "step into the shoes" of Chicago Truck. Here, Chicago Truck was listed as "consignee" and signed the receipt of delivery which incorporated the Bill of Lading as well as its terms regarding claims and time limits; if Chicago Truck were bringing this action, it would be subject to the notice requirements set forth in the Bill of Lading. Finally, Plaintiff fails to cite any relevant authority or analogous case law to support its argument that an owner seeking to recover under the receipt or bill of lading is not bound by the terms of the same. In short, Plaintiff seeks to recover based upon the bill of lading but wishes to avoid the defenses set forth in the same. *See e.g., Central Transport*

*Intern., Inc. v. Schuetz Container Sys.*, No. 04-72935, 2007 WL 1007492, * 4 (E.D. Mich. Mar. 29, 2007) (Rosen, J.) (In the context of a third-party beneficiary claim based on breach of contract, "Plaintiff has not identified any legal doctrine, nor is the Court aware of any, under which a party such as Defendant may be subject to liability for allegedly breaching a contract, yet not be entitled to interpose the defenses set forth in this very same contract.")

For all these reasons, the Court concludes that even assuming Plaintiff is entitled to sue Defendant under the Carmack Amendment, Plaintiff is subject to the notice of claim requirements incorporated in the Bill of Lading and Receipt.

B.      Estoppel

Plaintiff next argues that even assuming the time limits incorporated in the Bill of Lading are applicable to its Carmack Amendment claim, Defendant is estopped from asserting these claims because of its conduct.  Specifically, Plaintiff alleges that Defendant had actual knowledge of the damage to the Engine and did not allow Chicago Truck to file a claim for damage.

The record regarding Soraghan's actions is not in dispute.  Soraghan testified that he never filed a claim with Defendant and only contacted Defendant one time on the telephone.  (Soraghan Dep., at 57-58, 60.)  Regarding that single telephone conversation, Soraghan testified:

> I never talked to anybody from Central Transport other than I called
> their claims hotline and they asked me for my Central Transport
> account number.  When I couldn't provide one – because we don't
> have an account through them; we only use logistics brokers – they
> told me that they can't do anything, I need to go through my logistics
> broker.

(Soraghan Dep., at 60-61.)  Soraghan then contacted Blue Grace who sent him the

requisite claim form.  (*Id*., at 61.)  Soraghan never finished filling out the damage

claim form, and explained:

> We never got to the point where we got a number.  I couldn't get the
> parts– all the parts found, and I couldn't get what the labor was going
> to cost.  And by the time the year ended, we closed at the 24th – we
> closed at the – actually we closed earlier because it was a holiday
> week on that week.  So we closed in late December and then we never
> reopened, so [the form] just kind of got left by the wayside.

(*Id*., at 33.)  Despite never filing the damage claim with Defendant, Soraghan lied

and advised Plaintiff that he had filed the claim and sent him a copy of the form.

(*Id*., at 29; Love Dep., 59, 65.)  Soraghan also testified that no one from Defendant

ever advised him that it would not pay for the damage.  (Soraghan Dep., at 74.)

Soraghan stated that Blue Grace told him that it and Defendant were trying to

figure out who was at fault.  (*Id*. at 33.)  It is also undisputed that Defendant was

aware of the damage to the Engine.  (Bouchard Dep., at 54-59.)

     To the extent that Plaintiff contends that actual knowledge of a claim is a

substitute for a written claim, that position has been rejected - even by the case

upon which Plaintiff relies. *See Perini North River Assocs. v. Chesapeake & Ohio Ry. Co.*, 562 F.2d 269, 272-73 (3d Cir. 1977), (holding "We do not question the accepted rule that actual knowledge on the part of the carrier cannot substitute for the written notice required by a bill of lading."); *see also S&H Hardware & Supply Co. v. Yellow Transp., Inc*., 432 F.3d 550 (3d Cir. 2005) (recognizing that "oral or actual notice is not sufficient to satisfy the substantial compliance requirement; rather, some form of written notice is required.")  Moreover, Plaintiff does not cite any Sixth Circuit decision wherein a court estopped a party from asserting the notice claim requirements in a bill of lading or receipt in the context of the Carmack Amendment.  Indeed, in *Perini North*, the Second Circuit recognized that the Sixth Circuit flatly rejected estoppel in the context of claim brought pursuant to the predecessor to the Carmack Amendment in *B.A. Walterman Co. v. Pennsylvania Railroad*, 295 F.2d 627 (6th Cir. 1961).  In *Walterman*, the Sixth Circuit held that compliance with the claim requirements provided in the bill of lading were mandatory and that "[a]ctual notice received by the carrier of the damaged condition of the goods does not excuse the filing of the written claim...The carrier may not waive or be estopped to assert the requirements of the bill of lading as this would permit discrimination which is prohibited by law." *Id*. at 628 (citation omitted); *see also Ford Motor Co. v. Tranps. Indem. Co.*, 795 F.3d

538, 547 (6th Cir. 1989) (relying on *B.A. Walterman* to find that the time requirement in the Uniform Bill of Straight Lading is an element of the cause of action and not an affirmative defense.)

During oral argument, Plaintiff argued that the Sixth Circuit had distinguished its holding in *Walterman* in a later decision, *American Synthetic Rubber Corp. v. Louisville & Nashville Railroad Co.*, 422 F.2d 462 (1970). Plaintiff noted that in *American Synthetic* the Sixth Circuit held that "the purpose of the notice requirement is not to escape liability but to facilitate prompt investigation." *Id*.

Plaintiff's reliance on *American Synthetic* is unavailing. In *American Synthetic*, a railroad delivered the wrong carload of chemicals to the plaintiff consignee, who suffered damages when it mixed the misdelivered chemicals in its plant. Railroad officials later visited the plant to investigate the incident and those officials "acknowledged the existence of plaintiff's claim and admitted liability." *Id*. at 464. During the official's visit, the plaintiff consignee also presented the officials with documents and business records detailing the misdelivery, but plaintiffs did not file a formal notice of claim within the nine month time limit provided on the bill of lading. *Id*. In evaluating whether the plaintiff consignee's claim was sufficient to satisfy the notice of claim requirement in the bill of lading,

24

the Sixth Circuit held that "any written document, however informal, which indicates an intention to claim damages and identifies the shipment will be sufficient." *Id*. at 468.

While finding "substantial compliance" was sufficient for the notice of claim requirement in *American Synthetic*, the Sixth Circuit harmonized its decision with *Walterman*, noting that compliance with the notice requirement in the bill of lading was still mandatory and "could not be satisfied either by a verbal claim or by actual notice of the damages received by the carrier." *American Synthetic*, 422 F.2d at 468. The Sixth Circuit also distinguished the facts of *American Synthetic* from *Walterman*, noting that unlike *Walterman* where no written notice was filed, the *American Synthetic* consignee had presented "written documents" to the railroad in support of its claim which revealed the shipment at issue and the identified the source of the damages – the railroad's misdelivery of the tank car. *Id*. at 468-69.

In the present action, unlike *American Synthetic*, Defendant <u>never</u> received any written notice of a claim regarding the Engine – whether formal or informal in nature. Thus, the issue of whether there was "substantial compliance" is not before the Court. *See Trepel v. Roadway Exp., Inc*., 194 F.3d 708, 713 (6th Cir. 1999) (recognizing that strict compliance with the claim requirements as provided in 49 C.F.R. §§ 370.3, 1005.2 is not required in the Sixth Circuit and holding that

"substantial compliance" with the written claim requirement suffices under the regulations.)  Consistent with both *Walterman* and *American Synthetic*, Defendant's actual notice of the damage is not sufficient to satisfy the notice of claim requirement in the Receipt or the Bill of Lading.

Finally, even assuming that the Sixth Circuit recognizes estoppel this context, Plaintiff has not shown that estoppel would apply in the present action. *See S&H Hardware & Supply Co. v. Yellow Transp., Inc.*, 432 F.3d 550, 555-56 (3d Cir. 2005) (noting that only the Second and Fifth Circuits have "employed estoppel in the same fashion," citing *Lehigh Valley R.R. v. State of Russ.*, 21 F.2d 396 (2d Cir. 1927)); *Salzstein v. Bekins Van Lines*, 993 F.2d 1187, 1191-92 (5th Cir. 1993)).  In *S&H Hardware*, the Third Circuit held that where the defendant "did not say or do anything to lead S&H to believe it would not need to meet the claim filing requirement" nor "give S&H faulty information as to the proper method of filing" estoppel did not apply to excuse the defendant from the notice requirement.  The Third Circuit explained that it has "limited the application of estoppel to excuse the notice requirement to cases in which 'the carrier's conduct in some way induced the claimant's failure to file.'"  *Id*. at 555 (citing *Perini-North*, 562 F.2d at 272).

Plaintiff has not evidenced that there is any genuine issue of material fact regarding whether Defendant induced Plaintiff or Chicago Truck's failure to file a claim. While Soraghan testified initially that Defendant's representative would not speak with him regarding a claim if he did not have a customer number, even viewing the record in a light most favorable to Plaintiff, Sorgahan's failure to file a claim was not based upon this single conversation. Rather, Sorgahan testified that he had the claim form but did not submit it to Blue Grace or Defendant because he could not determine the price estimate prior to closing the business. (Sorgahan Dep., at 33.) Moreover, Soraghan testified that a few weeks after closing the business he chose to sell the damaged Engine for $16,000 and keep the proceeds (prior to the expiration of the nine month time limit as set forth in the Bill of Lading and Receipt of Delivery). The Court also rejects Plaintiff's attempts to connect its estoppel argument against Defendant to the misrepresentations of non-party Soraghan or Chicago Truck. Soraghan's misrepresentations to Love (however unfortunate) that he filed a damage claim with Defendant are not chargeable against Defendant, an entity to which Soraghan was neither an employee nor an agent.

Given all these facts, the Court finds that estoppel does not preclude Defendant from relying upon the notice requirement in the Bill of Lading.

Accordingly, Defendant's motion for summary judgment must be granted.

## IV. CONCLUSION

For all these reasons, the Court GRANTS Defendant's Motion for Summary

Judgment (ECF No. 28).

IT IS SO ORDERED.


                                                    s/Paul D. Borman_____
                                                    PAUL D. BORMAN
                                                    UNITED STATES DISTRICT JUDGE

Dated:  August 26, 2016



## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon
each attorney or party of record herein by electronic means or first class U.S. mail
on August 26, 2016.


                                                    s/Deborah Tofil_____
                                                    Case Manager

28